ROBAR CORPORATION v. KINGHAM

(No. 2001; April 19, 1937; 66 Pac. (2d) 1046)

For the appellant, the cause was submitted upon the brief of *Bard Ferrall* of Cheyenne.

For the respondent, the cause was submitted on the brief of *M. A. Kline* of Cheyenne.

BLUME, Chief Justice.

In the early part of September, 1932, the Wyoming Robar Corporation was running a filling station in Cheyenne, Wyoming. It was in financial trouble. It owed the State of Wyoming about four thousand dollars, and the state, seemingly, closed up the place. The corporation also had given a chattel mortgage for one thousand dollars to Lottie Shoemaker. This mortgage was a prior lien on the property of the corporation. It also owed bills for labor, the sum of $2500 to the Robar Corporation of Colorado, the plaintiff herein, which was secured by a chattel mortgage (junior to that of Lottie Shoemaker), and the sum of $1300 to the defendant (respondent here) Fred J. Kingham. The total sum which the Wyoming Robar Corporation then owed is estimated to have been approximately $10,000. The filling station was located upon leased ground, and the defendant, apparently as security for the amount owing him, had obtained an assignment of the leases. During the time when the filling station was still being operated he occupied part of the premises, selling rubber tires, and when the filling station was closed, he thought it best, for his interests, to attempt to conduct the station himself, and so took possession of it and apparently was running or attempting to run the place on or about September 10, 1932.

Mr. Rosenfield was president of the Robar Corporation, the Colorado corporation. When he heard that the filling station had been closed, he came to Cheyenne to look after the interests of his corporation. He had various conferences with Kingham, the defendant. The parties discussed as to whether the defendant should continue to conduct the station, and pay the plaintiff's claim, or whether the plaintiff should take over the

station and pay the defendant's claim. Rosenfield testified that as a result of these negotiations, defendant agreed, in consideration of plaintiff foregoing the foreclosure of its chattel mortgage, to pay to plaintiff the sum due thereon, doing so through the Skelly Oil Company, by adding to his bills the sum of one-half cent per gallon, the amount to be paid over to the plaintiffs; that this arrangement was carried out for several months, during which time the plaintiff was paid the sum of $314.00; that during the summer of 1933 a "gasoline war" was on in Cheyenne; that defendant asked to be granted a respite in making payments to plaintiff during that time, which was granted; that thereafter and on December 28, 1933, defendant refused to make any further payments, whereupon the present suit was started to enforce the agreement above mentioned.

The petition of plaintiff, filed in this case, alleged the foregoing agreement, and asked judgment against the defendant for the balance due plaintiff in the sum of $2185.40. Defendant answered, denying that any such agreement was made, and claimed, in separate defenses, that if it was made, it was violative of the statute of frauds. The case was tried to the court without a jury. Defendant's counsel asked the court to make special findings of fact and conclusions of law. This was done. The court found that no such agreement, as claimed by plaintiff, was made, and that if it was, it was in violation of the statute of frauds. It entered judgment for defendant, from which the plaintiff has appealed, alleging that the judgment is not sustained by sufficient evidence, and that it is contrary to law.

Counsel for plaintiff claims that none of the special findings of the court are sustained by sufficient evidence. We need to consider but one of the findings, namely, whether or not the defendant agreed to pay

plaintiff's claim, for the other findings are but subsidiary and are immaterial if no such agreement was actually made, as the court found. Rosenfield testified to the agreement, as already stated. Furthermore, it is admitted that the defendant signed the following paper:

"January 10, 1933

Skelly Oil Co.
Kansas City, Mo.
Gentlemen:

By virtue of an arrangement with the Robar Corporation of Denver, Colorado I hereby authorize the Skelly Oil Company to add to their invoice price of gasoline shipped to me at Cheyenne, Wyoming one half 1/2 cent per gallon, which is to be credited to the account of the Robar Corporation.

This payment made by me is to apply on a second mortgage of $2500.00 held by Robar Corporation recorded in Laramie County Wyoming book 271 page 322 which it is my desire to pay on the basis of 1/2¢ per gallon as requested above.

Kindly advise your willingness to handle for me.

Yours truly,

(Signed) F. Kingham."

Counsel for plaintiff also relies upon testimony of the defendant upon cross-examination under the statute. He testified to conversations between himself and Mr. Rosenfield, and the following questions and answers appear in the record:

"Q. Did Mr. Rosenfield inform you that Robar Corporation would be willing to take over the property and pay any indebtedness Carson (The Wyoming Robar Corporation) owed you, at the rate of a half cent a gallon on all gasoline sold in that station, or that, if you desired to take over the property, that you could pay the $2500 debt of the Robar Corporation at the rate of one half cent a gallon on all gasoline sold in the station? A. No, he wanted to make that a quarter cent a gallon. Q. I see. A. He wanted to give me a quarter cent a gallon; I would (should) give him a half cent a gallon. Q. In any event, you discussed an arrangement whereby one or the other of you took it

over? A. Yes that was discussed. Q. Did you ask Mr. Rosenfield that he give you some time to think over the propositions? A. Yes. Q. Did you thereafter inform him that you had determined which one you wanted to take? A. I told him we were out of gasoline, and to facilitate—— Q. Could you answer the question, as to which of the propositions you wanted to take? I will be glad to give you an opportunity to bring up explanations later on. A. I accepted. Q. You accepted one of the propositions? A. Yes. Q. Was the proposition you accepted the one that you would operate the station, and pay the Robar Corporation a half cent a gallon on all gasoline sold in that station? A. Yes that was the proposition, because I needed the gasoline immediately."

Later, on direct examination, the defendant testified that he never at any time or place agreed to pay the indebtedness owing to plaintiff on its mortgage; that, when the conversations were had with Rosenfield, the amount of the indebtedness against the filling station was not known, and (in substance) that that had to be known, before he could make a promise; that he wanted to operate the station; that there was no gasoline, and that, in order that he could commence the operation immediately, he was willing, for the time being, to pay the plaintiff at the rate of one-half cent per gallon for the gasoline sold at the station; that the arrangement was temporary and tentative, subject to cancellation at any time; that it was cancelled thereafter. The defendant was strongly corroborated by Mr. Kline, defendant's counsel. He stated, among other things, in substance, that the parties came to his office; that he was to represent Kingham and do the talking, which he did; that the first time when the parties came he told Rosenfield that he might as well forget the mortgage to the plaintiff, because it was worthless; that Rosenfield made the offer to take over the place or let the defendant do it and assume the obligations; that witness, however, told him that "I cannot let Fred

418

Kingham assume these obligations at the present time"; that they figured that there was an indebtedness against the place of over ten thousand dollars, and that cancellation of the leases had been served on Kingham. He testified also as to the final arrangements at a later time, and stated that the parties came back to his office; that the letter to the Skelly Oil Company was prepared, and that he stated that this could be signed "for the present" (until further facts were found out), and "you understand that we are not promising to pay your bill; that is one thing we will not do; we will not agree to pay the $2500 bill."

The letter to the Skelly Oil Company and the answers of the defendant when he was called for cross-examination lend color to the claim that defendant promised to pay the $2500 in controversy. The letter expressed a "desire" to pay this sum. While under some circumstances the "desire" to pay might, perhaps, be construed as a "promise" to pay, that construction is not at least a necessary one. Holt v. Akarman, 84 N. J. L. 371, 86 Atl. 408; Greer Machinery Co. v. Steins, (Tenn.) 59 S. W. 692; In re Wright's Estate, 155 Pa. 64, 25 Atl. 877. In the instant case the letter is inconsistent with the defendant's testimony that the arrangement mentioned therein was of a temporary and a tentative character. The answers of the defendant on cross-examination are not entirely clear. Counsel for plaintiff construes his testimony to mean that he would accept the proposition of paying the $2500 to plaintiff. But upon close examination, it will be found that it is doubtful that it refers to that; it seems to refer to the fact that he would pay the plaintiff at the rate of one-half cent a gallon. If that is correct, then this testimony is consistent with the claim that the arrangement was temporary and tentative only, subject to cancellation at any time. And the record seems to indicate that if he had been permitted to answer

fully he would have stated the same thing which he stated on direct examination. In any event we must take all of his testimony and that of Mr. Kline into consideration, and when we do so, it is clear, that the court was warranted in finding that no promise to pay the plaintiff's indebtedness of $2500 was ever made, and that is particularly true in view of the fact that the indebtedness against the filling station was over ten thousand dollars; that the total indebtedness was not known; that it would have been hazardous for defendant to have made the promise claimed. The value of the station, though great enough according to Rosenfield's testimony to take care of all indebtedness, was at least questionable, and according to defendant's testimony, was far below the amount necessary to cover the indebtedness. We think that the judgment is sustained by substantial testimony. It is, accordingly, affirmed.

*Affirmed.*

RINER and KIMBALL, JJ., concur.